## MORRIS & CUMMINGS DREDGING CO. v. FIREMAN'S FUND INS. CO.

District Court, S. D. New York.  September 12, 1929.

Branch P. Kerfoot, of New York City, for plaintiff.

Bigham, Englar & Jones, of New York City, for defendant.

FRANK J. COLEMAN, District Judge. The only question presented is whether the alleged binder was issued upon conditions precedent which concededly have not been complied with. Plaintiff, the owner of numerous dredges, etc., through its broker, employed Frank B. Hall & Co. to obtain $720,-

000 insurance on its various properties upon three conditions: (1) That all of the items would be covered; (2) that the average rate would not exceed 1½ per cent.; and (3) that the insurance companies would be approved by plaintiff's president. Pursuant to that employment, Frank B. Hall & Co.'s representative, Benfield, called upon defendant's underwriter, Throckmorton, and they at that time made the agreement which is the subject of this suit. The only issue is as to the nature and terms of that agreement.

Both Benfield and Throckmorton testified, and there is practically no discrepancy between them. Benfield said he wished to place the insurance at 1½ per cent., which seemed too low to Throckmorton, and it was thereupon orally agreed that the latter would take a 10 per cent. interest in the entire schedule of $720,000, with an unimportant exception, upon condition that the entire balance was subscribed by so-called leaders of the market, and it was further agreed that defendant's rate would be the same as that of the other companies. As a "notation" of the oral agreement, they placed their initials on the face of plaintiff's application after the word "Binding" and also the date of the conversation, August 21, 1923. At the same time, Throckmorton wrote on the application, "Attaching date to be advised, rate to be advised," and the word "provisional," and scratched out the rate that had previously been written in. Each side retained a copy of the application thus indorsed and initialed.

Benfield testified:

"I told him I would take this (the application) and when I had gotten the rest of the market or the leaders interested and got the insurance lined up and completed I would come back and show it to him so he could attach his line.

"He signed it (the application) and said 'Now this is not to be effective until you go to the other underwriters and get them on the line and complete the insurance.' I said 'All right, Mr. Throckmorton that is to be the case.' I told him my order was conditional upon the companies being acceptable to the assured."

Throckmorton testified:

"Mr. Benfield stated that the insurance was only to be binding or would only attach upon his being successful in completing 100% of the total amount of insurance required at a rate which would satisfy or be satisfactory to the assured and further that the companies must also be satisfactory to the assured."

About four weeks after the conversation, a dredge was lost by fire, and the following day defendant wrote upon the face of its copy of plaintiff's application, "Cancelled, marked off," dating that notation the day after the fire. Concededly the balance of the insurance was never taken by other companies; no "attaching date" was ever "advised"; no rate was ever "advised"; and neither the plaintiff nor its president ever approved the defendant's company.

It is plaintiff's contention that the transaction between Benfield and Throckmorton had two aspects, (1) the making of a conditional agreement to issue a policy; and (2) the issuing of an absolute binder pending the determination of whether Benfield could comply with the conditions. In support of the contention, plaintiff urges that, if there was no binder in force, it was unnecessary for defendant to mark it "Cancelled, marked off," after the fire. Whether this act was logical or not, it seems plain to me from the uncontradicted testimony that defendant never assumed any risk whatever, and that there was no binding contract of any sort between the parties. What plaintiff calls a binder was a "notation" of the agreement, and not only was subject to the conditions orally agreed to, but had them expressly alluded to in itself in the words "provisional" and "Attaching date to be advised, rate to be advised." Benfield had no authority to accept a binder under the circumstances, or to obligate plaintiff to pay for it; and it was not the mutual intention that one be considered as issued until the conditions were complied with.

A verdict is therefore directed for the defendant. Settle order on notice.